# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ARIEL CERVANTES ANGUIANO,<br>Plaintiff,<br>v.<br>UNITED STATES IMMIGRATION AND CUSTOMS ENFORCEMENT,<br>Defendant. | Case No.18-cv-01782-JSC<br><br>**SECOND ORDER RE: CROSS-MOTIONS FOR SUMMARY JUDGMENT**<br><br>Re: Dkt. Nos. 23, 25, 33, 34 |

Plaintiff Ariel Cervantes Anguiano filed this action under the Freedom of Information Act, 5 U.S.C. § 552 ("FOIA"), seeking 12 categories of documents from the United States Immigration and Customs Enforcement agency ("ICE") for purposes of a motion to suppress he plans to bring in his removability proceedings pending in immigration court. (Dkt. Nos. 23 & 25.) The parties' cross-motions for summary judgment came before the Court for hearing on November 9, 2018. (Dkt. No. 31.) On November 13, 2018, the Court issued an order concluding that (1) ICE had failed to prove as a matter of law that its search was adequate in all respects; (2) the Court could not make a determination regarding ICE's invocation of Exemptions 5 and 7(E) without a review of certain documents *in camera*; and (3) ICE properly invoked Exemption 6 and 7(C) to protect private information regarding third parties and ICE employees. (Dkt. No. 32.) The Court thus ordered ICE to submit a new declaration regarding its search and to submit certain documents *in camera*. ICE has done so. (Dkt. Nos. 33, 34.) Having considered the parties' prior briefing, the relevant legal authority, and the supplemental submissions, the Court concludes as follows.[1]

---

[1] The Court incorporates its prior Order (Dkt. No. 32) by reference and rather than repeating the factual and legal conclusions, and only summarizes those relevant to the remaining issues before

**I.      Adequacy of Search**

"FOIA requires an agency responding to a request to demonstrate that it has conducted a search reasonably calculated to uncover all relevant documents." *Hamdan v. U.S. Dep't of Justice*, 797 F.3d 759, 770 (9th Cir. 2015) (internal citation and quotation marks omitted). To demonstrate "the adequacy of the search, the agency may rely upon reasonably detailed, nonconclusory affidavits submitted in good faith." *Zemansky v. U.S. E.P.A.*, 767 F.2d 569, 571 (9th Cir. 1985). In reviewing the adequacy of a search, the issue "is not whether there might exist any other documents possibly responsive to the request, but rather, whether the search for those documents was adequate." *Lahr v. Nat'l Transp. Safety Bd.*, 569 F.3d 964, 987 (9th Cir. 2009). "The adequacy of the agency's search is judged by a standard of reasonableness, construing the facts in the light most favorable to the requestor." *Citizens Comm'n on Human Rights v. Food & Drug Admin.*, 45 F.3d 1325, 1328 (9th Cir. 1995). "[T]he failure to produce or identify a few isolated documents cannot by itself prove the searches inadequate." *Hamdan*, 797 F.3d at 771. Summary judgment is inappropriate "if a review of the record raises substantial doubt, particularly in view of well-defined requests and positive indications of overlooked materials...." *Hamdan*, 797 F.3d at 771 (internal citation and quotation marks omitted*); see also Animal Legal Def. Fund v. U.S. Food & Drug Admin.*, 836 F.3d 987, 989–90 (9th Cir. 2016) ("there is no principled distinction to be drawn between our usual summary judgment standard and the standard to be applied in FOIA cases…summary judgment may be granted only when there are no disputed issues of material fact, and thus no factfinding by the district court.").

Plaintiff raised three challenges to the adequacy of ICE's search: (1) that ICE unreasonably narrowed the scope of its search; (2) that ICE applied overly restrictive search terms to its searches; and (3) that ICE failed to conduct an adequate search for documents responsive to Request 12. The Court concluded that ICE's search was generally reasonable, but that ICE had failed to adequately explain its use of search terms and failed to demonstrate that it conducted a reasonable search for documents responsive to Request 12. (Dkt. No. 32 at 12.[2]) ICE has submitted a Second Supplemental

---

the Court.

[2] Record citations are to material in the Electronic Case File ("ECF"); pinpoint citations are to the ECF-generated page numbers at the top of the documents.

Declaration from Ms. Pavlik-Keenan which explains the search terms used and scope of the search in response to Request 12. (Dkt. No. 34-1.)

With respect to the search terms, there were two issues: (1) ICE's failure to identify all the search terms used, and (2) the adequacy of the identified search terms. The Second Supplemental Pavlik-Keenan Declaration resolves the first issue. (Dkt. No. 34-1.) ICE has now provided Plaintiff with a complete list of the search terms used. (*Id.* at ¶ 5.) *See People for the Am. Way Found. v. Nat'l Park Serv.*, 503 F. Supp. 2d 284, 293 (D.D.C. 2007) (collecting cases regarding the agency's obligation to provide the search terms used so that plaintiffs have sufficient information from which they can evaluate the adequacy of the search). As for the adequacy of the search terms, the Second Supplemental Pavlik-Keenan Declaration attests that the San Francisco Field Officers were directed to use the search terms that they reasonably believed would appear in the records they maintained. (Dkt. No. 34-1 at ¶ 6.) Each of the officers searched by Plaintiff's A-number, and five of the six officers searched for variants on Plaintiff's name, and four of the six searched for variants on the operation name. The Court is persuaded that the discrepancies in the search terms are not material given that they were based on the officers' "unique knowledge of the manner in which they keep their own files and the vocabulary they use." (*Id.*) *See Nat'l Immigration Law Ctr. v. United States Immigration & Customs Enf't*, 2015 WL 12684437, at \*6 (C.D. Cal. Dec. 11, 2015) (rejecting plaintiff's argument that individual ICE field office searches were inadequate because the declarations "explain[ed] in some detail" why the individual offices used the search terms they did.).

Likewise, the Court is persuaded that ICE conducted an adequate search for training-related documents—even though the individual officers did not search for training-related documents—given Ms. Pavlik-Keenan's representation that the Training Division would have all such records including records related to the individual officers at issue. *See Liberation Newspaper v. U.S. Dep't of State*, 80 F. Supp. 3d 137, 146 (D.D.C. 2015) ("[w]here the search terms are reasonably calculated to lead to responsive documents, the Court should not 'micro manage' the agency's search.").

Finally, as to the adequacy of ICE's search for documents responsive to Request 12, which sought "[a]ny and all records or information regarding ICE communications with the San Francisco Police Department related to Mr. Cervantes's apprehension and/or related to ICE officers identifying

3

themselves as police or police officers," the Court previously concluded that ICE had failed to demonstrate that it had conducted a reasonable search for responsive documents. (Dkt. No. 32 at 11-12.) In particular, ICE did not search for records or communications between ICE and the San Francisco Police Department related to ICE officers identifying themselves as police or police officers and limited its search for responsive documents to the six individuals in the San Francisco Field Office directly involved in Plaintiff's apprehension. The Court ordered the parties to meet and confer regarding additional search terms. According to the Second Supplemental Pavlik-Keenan Declaration, they did so on November 26, 2018 and agreed upon a search of the emails for the ICE Field Office Director, the Deputy Field Office Director, and the Assistant Field Officer Directors of the San Francisco Field Office from 2014 and 2015 using the search term "@sfgov.org" (the email extension for the San Francisco Police Department). (Dkt. No. 34-1 at ¶¶ 10-11.) ICE has conducted part of this search and will complete the remainder by January 4, 2019. Thus far, ICE has identified three non-responsive documents. (*Id*. at ¶ 11.)

In sum, the Court is persuaded that ICE has "conducted a search reasonably calculated to uncover all relevant documents." *Hamdan*, 797 F.3d at 770. ICE is entitled to summary judgment with respect to Plaintiff's first claim regarding the adequacy of the agency's search under 5 U.S.C. § 552(a).

## II. FOIA Exemptions

The FOIA calls for "broad disclosure of Government records." *CIA v. Sims*, 471 U.S. 159, 166 (1985). To ensure broad disclosure, the FOIA "gives individuals a judicially-enforceable right of access to government agency documents." *Lion Raisins v. Dep't of Agric.*, 354 F.3d 1072, 1079 (9th Cir. 2004); 5 U.S.C. § 552. The FOIA specifically provides, in relevant part, that: "each agency, upon any request for records which (i) reasonably describes such records and (ii) is made in accordance with published rules stating the time, place, fees (if any), and procedures to be followed, shall make the records promptly available to any person." 5 U.S.C. § 552(a)(3)(A). There is a strong presumption in favor of disclosure. *See U.S. Dep't of State v. Ray*, 502 U.S. 164, 173 (1991). This "general philosophy of full agency disclosure [applies] unless information is exempted under clearly delineated statutory language." *John Doe Agency v. John Doe Corp.*, 493 U.S. 146, 151-52 (1989) (quotation marks and citation omitted). These exemptions "must be
4

narrowly construed." *John Doe Agency*, 493 U.S. at 154. The government agency bears the burden to prove a particular document or redaction falls within one of the nine statutory exemptions from disclosure. *Ray*, 502 U.S. at 173; *Lahr v. NTSB*, 569 F.3d 964, 973 (9th Cir. 2009).

Even if an exemption applies, an agency may only withhold the information to which the exemption applies. *Yonemoto v. Dep't of Veterans Affairs*, 686 F.3d 681, 688 (9th Cir. 2012). The agency is therefore required to provide all "reasonably segregable" portions of the records to the requester. 5 U.S.C. § 552(b). "The burden is on the agency to establish that all reasonably segregable portions of a document have been segregated and disclosed." *Pac. Fisheries, Inc. v. United States*, 539 F.3d 1143, 148 (9th Cir. 2008). "To meet its burden in this regard, the agency must provide[ ] a detailed justification and not just conclusory statements." *ACLU of N. Cal. v. FBI*, No. C 12-03728 SI, 2014 WL 4629110, at *3 (N.D. Cal. Sept. 16, 2014) (internal quotation marks and citation omitted).

In response to Plaintiffs' FOIA request, ICE asserted three categories of statutory exemptions: (1) Exemption 5 which generally protects non-discoverable information such as information protected by attorney-client or work-product privileges, *see* 5 U.S.C. § 552(b)(5); (2) Exemption 7(E) which protects records compiled for law enforcement purposes which would disclose techniques and procedures not generally known, *see id.* at § 552(b)(7)(E); and (3) Exemptions 6, and 7(C) which protects disclosure of information that would constitute an unwarranted invasion of personal privacy, *see id.* at §§ 552(b)(6), 552(b)(7(C). The Court previously concluded that ICE had met its burden of establishing that the names and other identifying information of ICE employees was properly withheld in accordance with Exemptions 6 and 7(C). (Dkt. No. 32 at 18.) The Court also concluded that ICE had met its burden for invoking Exemption 7(E) over the Fugitive Operations Handbook. (*Id*. at 21.) However, the Court concluded that it lacked sufficient information to determine whether ICE had properly invoked Exemption 7(E) with respect to the Department of Justice Handbook and the ERO Training Material and Policy Refresher on the Fourth Amendment. (*Id*. at 22-23.) The Court also concluded that it lacked sufficient information with respect to Exemption 5. (*Id*. at 18-19.) ICE was ordered to produce the unredacted

documents for *in camera* review.

### A. Exemption 7(E)

Exemption 7(E) protects records from disclosure if those records "would disclose techniques and procedures for law enforcement investigations or prosecutions, or would disclose guidelines for law enforcement investigations or prosecutions if such disclosure could reasonably be expected to risk circumvention of the law." 5 U.S.C. § 552(b)(7)(E). "The statutory requirement that the government show that disclosure 'could reasonably be expected to risk circumvention of the law' applies only to guidelines for law enforcement investigations or prosecutions, not to techniques and procedures." *American Civil Liberties Union of Northern California v. United States Department of Justice*, 880 F.3d 473, 491(9th Cir. 2018) (quoting *Hamdan v. U.S. Dep't of Justice*, 797 F.3d 759, 778 (9th Cir. 2015)). Investigative techniques are only exempt if they "are not generally known to the public." *Rosenfeld v. U.S. Dep't of Justice*, 57 F.3d 803, 815 (9th Cir. 1995). "As used in Exemption 7(E), 'guidelines' refer to how the agency prioritizes its investigative resources, while 'techniques and procedures' cover 'how law enforcement officials go about investigating a crime.'" *Am. Civil Liberties Union of San Diego & Imperial Ctys. v. United States Dep't of Homeland Sec.*, No. 15-0229, 2017 WL 9500949, at *12 (C.D. Cal. Nov. 6, 2017) (quoting *Allard K. Lowenstein Int'l Human Rights Project v. Dep't of Homeland Sec.*, 626 F.3d 678, 682 (2d Cir. 2010)).

While "Exemption 7(E) sets a relatively low bar for the agency to justify withholding" the agency still must "demonstrate logically how the release of the requested information might create a risk of circumvention of the law." *Blackwell v. F.B.I.*, 646 F.3d 37, 42 (D.C. Cir. 2011); *see also American Immigration Council v. United States Department of Homeland Security*, 30 F.Supp.3d 67, 76 (D.D.C. 2014) (holding that the agency "must nevertheless provide a relatively detailed justification for each record that permits the reviewing court to make a meaningful assessment of the redactions.").

#### 1. Department of Justice Handbook on "The Law of Arrest, Search and Seizure for Immigration Officers"

ICE invoked Exemption 7(E) over a chapter heading and the contents thereof in the

Department of Justice Handbook on "The Law of Arrest, Search and Seizure for Immigration Officers." The Supplemental Pavlik-Keenan Declaration attested that:

> The segregated and redacted text reveal a law enforcement sensitive technique and procedure regarding undercover operations that is not well known, as well as guidelines surrounding it. Disclosure of this information could reasonably be expected to jeopardize ongoing ICE investigations and operations and assist those seeking to violate or circumvent the law by assisting fugitive aliens in identifying undercover initiatives and evading apprehension.

(Dkt. No. 26-1 at ¶ 25.) The Court concluded that without even the name of the technique or any context for why this technique out of all the techniques referenced in the handbook is not commonly known, the Court lacked sufficient information to consider whether ICE properly redacted this information under Exemption 7(E). Having completed its *in camera* review of the chapter, the Court concludes that ICE has failed to meet its burden of "demonstrating logically how the release of the requested information might create a risk of circumvention of the law." *Blackwell*, 646 F.3d at 42. The chapter at issue consists of three paragraphs and only provides general information regarding this law enforcement tactic and ICE has failed to show how revealing this very generalized information would assist fugitives in identifying undercover initiatives and evading apprehension. "[T]he Government may not withhold a document simply because the document describes a specific application of the generally known technique or procedure—the document must reveal something more." *See Elec. Frontier Found. v. Dep't of Justice*, No. 15-CV-03186-MEJ, 2016 WL 7406429, at *16 (N.D. Cal. Dec. 22, 2016) (collecting cases re: the same).

### 2. ERO Training Material and Policy Refresher on the Fourth Amendment

ICE invoked Exemption 7(E) over portions of the ERO Training Material and Policy Refresher on the Fourth Amendment because

> the training materials includes discussion of certain ERO-specific practices and procedures related to gathering evidence, taking statements, utilizing law enforcement databases, and engaging in hot pursuit. The redacted material also includes step-by-step instructions for conducting particular removal operations and information on law enforcement databases. [] Disclosure of this information, which is not well known, could reasonably be expected to jeopardize ongoing ICE investigations and operations and assist those seeking to violate or circumvent the law.

(Dkt. No. 26-1 at ¶ 24.) Plaintiff raised the same objections with respect to each of the documents

7

over which ICE asserted Exemption 7(E); namely, that ICE provided insufficient information to invoke the exemption and has failed to show that the redacted techniques and guidelines are not generally unknown. The Court considered—and rejected—these arguments in the context of the Fugitive Operations Handbook. (Dkt. No. 32 at 19.21.) Having reviewed the redacted portions of the ERO Training Material and Policy Refresher on the Fourth Amendment *in camera* the Court concludes that ICE has properly invoked Exemption 7(E) over this material. The redacted material provides a "detailed, technical analysis of the techniques and procedures used to conduct law enforcement investigations," including "details or means of deploying law enforcement techniques." *Am. Civil Liberties Union of N. California v. United States Dep't of Justice*, 880 F.3d 473, 491-492 (9th Cir. 2018). While the public may generally know that ICE uses particular techniques, there is no dispute on this record that the step-by-step means for applying these techniques is not publicly known. *See Hamdan*, 797 F.3d at 777–78.

The Court thus concludes that ICE has met its burden for invoking Exemption 7(E) over the ERO Training Material and Policy Refresher on the Fourth Amendment. Having concluded that ICE properly invoked Exemption 7(E) over these materials, it is unnecessary to also decide whether ICE properly withheld this material under Exemption 5 as ICE claimed both exemptions simultaneously. (Dkt. No. 26 at 28, n.7.)

**CONCLUSION**

For the reasons stated above, the Court GRANTS summary judgment in ICE's favor on Plaintiff's first claim regarding the reasonableness of the search under 5 U.S.C. § 552(a). The Court GRANTS summary judgment in ICE's favor with respect to Plaintiff's second claim under 5 U.S.C. § 552(a)(3)(A) except as to ICE's claim of Exemption 7(E) over the Department of Justice Handbook on "The Law of Arrest, Search and Seizure for Immigration Officers." Summary judgment shall be entered in Plaintiff's favor on that portion of the second claim.

//
//
//
//

This Order disposes of Docket Nos. 23 and 25.

**IT IS SO ORDERED.**

Dated: December 21, 2018

_____
JACQUELINE SCOTT CORLEY
United States Magistrate Judge